UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOAN FLORENCE JOHNS | CIVIL ACTION |
| VERSUS | NO. 17-3304 |
| BP EXPLORATION & PRODUCTION INC., *et al.* | SECTION M (5) |

## **ORDER & REASONS**

Before the Court is a *Daubert* motion *in limine* to exclude the general causation opinions of plaintiff's medical expert Dr. Jerald Cook filed by defendants BP Exploration & Production Inc., BP America Production Company, BP p.l.c., Halliburton Energy Services, Inc., Transocean Holdings LLC, Transocean Deepwater, Inc., and Transocean Offshore Deepwater Drilling, Inc. (collectively, "Defendants").[1]  Plaintiff Joan Florence Johns responds in opposition,[2] and Defendants reply in further support of their motion.[3]

Also before the Court is Defendants' motion for summary judgment in which they argue that the case should be dismissed because Johns cannot prove general causation without Cook's opinions.[4]  Johns responds in opposition.[5]

Having considered the parties' memoranda, the record, and the applicable law, the Court grants Defendants' motion to exclude Cook, finding that his opinions on general causation do not meet the *Daubert* standard of reliability.  Consequently, the Court also grants Defendants' motion

---

[1] R. Doc. 52.
[2] R. Doc. 56.
[3] R. Doc. 63.
[4] R. Doc. 53.
[5] R. Docs. 54; 54-5.  R. Doc. 54-5 is the sealed portion of Johns's opposition.

for summary judgment because, without Cook's testimony, Johns has no evidence of general causation, which is necessary to prove her toxic-tort claims.

## I.    BACKGROUND

This case is one of the "B3 cases" arising out of the *Deepwater Horizon* oil spill that occurred on April 20, 2010.[6]  The B3 plaintiffs all make "claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response (e.g. dispersant)."[7]  These cases were originally part of a multidistrict litigation ("MDL") pending in another section of this Court before Judge Carl J. Barbier.  When Judge Barbier approved the *Deepwater Horizon* medical benefits class action settlement agreement, the B3 plaintiffs either opted out of the settlement or were excluded from the class definition.[8]  Judge Barbier then severed the B3 cases from the MDL, and those cases were reallotted among the judges of this Court.[9]

Johns, a citizen and resident of Mississippi, alleges that she was employed to perform onshore oil-spill response activities in Gulfport, Mississippi.[10]  Johns alleges that she was exposed to crude oil and dispersants while engaged in the cleanup efforts and had adverse health conditions or symptoms including, but not limited to, depression, cough, sinus problems, breathing difficulties, headaches, eye irritation, skin irritation, rashes, and itching.[11]  Johns opted out of the medical benefits class action settlement agreement.[12]  In this action, she asserts claims for negligence, negligence *per se*, and gross negligence with respect to the oil spill and cleanup.[13]

---

[6] R Doc. 6 at 1-2, 50.
[7] *Id.* at 50.
[8] *Id.* at 51 n.3.
[9] *Id.* at 1-58.
[10] R. Doc. 1-1 at 1-9.
[11] *Id.*
[12] *Id.* at 2.
[13] R. Doc. 1 at 5.

2

In the case management order for the B3 bundle of cases, Judge Barbier noted that, to prevail, "B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[14]  He further observed that causation "will likely be the make-or-break issue for many B3 cases," and "the issue of causation in these toxic tort cases will require an individualized inquiry."[15]

Johns relies on Cook to provide expert testimony as to general causation, *i.e.*, that exposure to oil and dispersants was capable generally of causing the kind of health issues she alleges.[16] Cook is a retired Navy physician with a master's degree in environmental toxicology.[17]  He is a fellow of the American College of Occupational and Environmental Medicine and board certified in occupational medicine, public health, and general preventative medicine.[18]

Cook issued an omnibus, non-case specific general causation expert report that has been used by many B3 plaintiffs.  Cook does not specifically discuss Johns's symptoms, nor does he even mention her.[19]  The report is divided into five chapters.[20]  Chapter 1 introduces Cook and his qualifications.[21]  Chapter 2 provides background information about the *Deepwater Horizon* oil spill.[22]

Chapter 3 describes Cook's methodology.[23]  Here, Cook states that "[t]he first step for causation analysis toxicology is to review and analyze the available scientific literature to

---

[14] R. Doc. 6 at 53.

[15] *Id.* at 53-54.

[16] R. Doc. 52-5.  Johns has not produced an expert report on specific causation, *i.e.*, that she was exposed to quantities of oil or dispersants sufficient to cause her particular alleged injuries.  Instead, she contends that expert testimony on specific causation is not required to prove the types of transient, irritant symptoms she allegedly suffered. R. Doc. 56 at 2.

[17] R. Doc. 52-5 at 5. Defendants do not challenge Cook's qualifications to testify as a medical expert in toxicology.

[18] *Id.*

[19] *See generally id.*

[20] *Id.* at 2-4.

[21] *Id.* at 5-6.

[22] *Id.* at 7-13.

[23] *Id.* at 14-31.

determine the strength of association between environmental exposure and a health effect."[24]  He then describes various research methods and databases used to locate scholarly literature, explaining that the "[s]ources used for this causation analysis are selected based on the quality of the study and the study design."[25]  According to Cook, "[t]he hierarchy of clinical evidence shows that systematic reviews and meta-analyses are the most reliable in predicting clinical outcomes because they are designed to include the most relevant collection of available studies."[26]

Cook states that "[o]ccupational medicine physicians and environmental toxicologists follow the Bradford Hill criteria (1965) for causation analysis" as well as the criteria discussed in the *Reference Manual on Scientific Evidence, Third Edition* (National Research Council, 2011).[27] He then explains those criteria, which include: (1) temporal relationship; (2) strength of the association; (3) dose-response relationship; (4) replication of findings; (5) biologic plausibility; (6) consideration of alternative explanations; (7) cessation of exposure; (8) specificity of the association; and (9) consistency with other knowledge.[28]  Cook states further that "[d]rawing causal inferences after finding an association and considering these factors requires judgment and analysis to determine if a cause-and-effect relationship exists or not."[29]

Chapter 4 of Cook's report chronicles a history of global oil spills and the experiences of cleanup workers.[30]  Cook also discusses and critiques the 2011 final health hazard evaluation ("HHE") report on the *Deepwater Horizon* accident issued by the National Institute for Occupational Safety and Health.[31]  According to Cook, the HHE report noted that "[d]uring the

---

[24] *Id.* at 17.
[25] *Id.* at 17-23.
[26] *Id.* at 19.
[27] *Id.* at 24-30.
[28] *Id.*
[29] *Id.* at 24.
[30] *Id.* at 32-65.
[31] *Id.* at 35-44.

response and cleanup activities, workers complained of various acute medical symptoms, including nasal congestion, cough, shortness of breath, headaches, nausea, dizziness, dermal irritation or rash, itchy and sore eyes, as well as heat-related conditions."[32]  Further, Cook discusses and critiques the *Deepwater Horizon* oil spill Coast Guard cohort which compiled "longitudinal data" on Coast Guard service members and "shows a significant relationship between oil-exposed responders and respiratory symptoms" and a correlation with neurological and dermal symptoms.[33] In addition, chapter 4 contains a discussion and critique of the Gulf Long-Term Follow-Up study ("Gulf Study"), which investigated the possible effects of oil-spill cleanup work associated with the *Deepwater Horizon* response.[34]  The Gulf Study showed a correlation of irritant symptoms, such as cough, burning nose and eyes, and skin irritation, with exposure to dispersants.[35]

Chapter 5 contains Cook's opinions on general causation of four broad categories of health conditions: (1) respiratory conditions; (2) dermal conditions; (3) ocular conditions; and (4) cancers.[36]  Within the "respiratory conditions" section, Cook discusses rhinosinusitis, asthma, bronchitis, and chronic obstructive pulmonary disease.[37]  Dermatitis is the only dermal condition discussed.[38]  Further, conjunctivitis and dry-eye disease are the ocular conditions contained in the report.[39]  As to respiratory, dermal, and ocular conditions, Cook opines that these types of problems are associated with chemical exposures during oil-spill cleanup work.[40]  Yet, Cook's report does

---

[32] *Id.* at 36.
[33] *Id.* at 44-57.
[34] *Id.* at 57-62.
[35] *Id.* at 59-60.
[36] *Id.* at 70-102.  Johns does not claim to have developed cancer as a result of her oil-spill cleanup work. Thus, the "cancer" section of the report is not discussed herein.
[37] *Id.* at 70-87.
[38] *Id.* at 87-93.
[39] *Id*. at 93-99.
[40] *Id.* at 86, 92, 99.

not include any opinion about a link between any specific chemical compound and any particular disease.[41]

## II.   PENDING MOTIONS

In their motion to exclude Cook's expert testimony, Defendants argue that Cook's report fails to provide reliable general causation opinions on Johns's injuries, because Cook does not verify Johns's diagnosis, did not follow a proper research methodology or adequately evaluate the scientific literature, and does not identify the harmful level of any chemical that leads to any specific medical condition.[42]   Defendants point out that another section of this Court has found these faults with Cook's expert reports as presented in similar B3 cases, *see Novelozo v. BP Expl. & Prod. Inc.*, 2022 WL 1460103 (E.D. La. May 9, 2022); *Murphy v. BP Expl. & Prod. Inc.*, 2022 WL 1460093 (E.D. La. May 9, 2022), and his report in this case should be excluded for the same reasons.[43]   In their accompanying motion for summary judgment, Defendants argue that once Cook's general causation opinions and testimony are excluded, Johns's case must be dismissed because she has no expert testimony on general causation, which is required to prove her toxic-tort claims.[44]

---

[41] *Id.* at 70-102.

[42] R. Docs. 52-1 at 1-20; 63 at 1-12.

[43] *Id.*

[44] R. Doc. 53-2 at 1-11.  Defendants also argue that they are entitled to summary judgment because Johns lacks expert testimony on specific causation.  *Id.* at 11-16.  However, Judge Barbier recently held in three other B3 cases that expert testimony on specific causation is not always necessary in toxic-tort cases.  *Stephens v. BP Expl. & Prod. Inc.*, 2022 WL 1642136 (E.D. La. May 24, 2022); *Wallace v. BP Expl. & Prod. Inc.*, 2022 WL 1642166 (E.D. La. May 24, 2022); *Turner v. BP Expl. & Prod. Inc.*, 2022 WL 1642142 (E.D. La. May 24, 2022).  Specifically, Judge Barbier held that expert testimony on general causation combined with specific evidence of the nature of a plaintiff's exposure is sufficient proof when the plaintiff complains of irritant symptoms that constitute transient or temporary medical conditions within the common knowledge of laypersons.  *Stephens*, 2022 WL 1642136, at *3-4; *Wallace*, 2022 WL 1642166, at *3-4; *Turner*, 2022 WL 1642142, at *3-4.  On the other hand, expert testimony on specific causation is required when the symptoms are not within the common knowledge of laypersons and not classified as transient or temporary.  *Stephens*, 2022 WL 1642136, at *3-4; *Wallace*, 2022 WL 1642166, at *3-4; *Turner*, 2022 WL 1642142, at *3-4.  In each case, Judge Barbier categorized the conditions claimed by each plaintiff as requiring, or not requiring, expert testimony on specific causation.  *See Stephens*, 2022 WL 1642136, at *4; *Wallace*, 2022 WL 1642166, at *4; *Turner*, 2022 WL 1642142, at *4.  BP did not challenge Cook's general causation opinions in those cases.  *Stephens*, 2022 WL 1642136, at *2; *Wallace*, 2022 WL 1642166, at *2; *Turner*, 2022 WL 1642142, at *2.  In this case, it is unnecessary to sort Johns's claimed symptoms into those requiring expert testimony on specific

6

In opposition, Johns argues that Cook, in this case, has improved his report and remedies the infirmities noted in the *Novelozo* and *Murphy* decisions.[45]  Johns also argues that neither a diagnosis, nor Cook's confirmation of same, is necessary for her acute symptoms and temporary forms of pain and suffering that were caused by oil and dispersants and are within a layperson's common knowledge.[46]  She also argues that Cook employs a proper methodology in his analysis of the literature, particularly the Coast Guard cohort and Gulf Study.[47]  Further, Johns argues that Cook could not identify the harmful level of exposure to each chemical at issue because BP prevented contemporaneous studies of oil-spill cleanup workers.[48]  Finally, Johns contends that Cook need not provide opinions as to each of her claimed medical conditions because they overlap with those identified in the Coast Guard cohort and Gulf Study.[49]  In opposition to the motion for summary judgment, Johns argues that the motion should be denied as to the conditions for which she does not need expert medical testimony on specific causation because Cook's general causation opinions should not be excluded.[50]

## III.    LAW & ANALYSIS

### A.  Defendants' *Daubert* Motion to Exclude Cook

#### 1.  *Daubert* standard

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence.  *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires

---

causation and those that do not because Johns cannot provide the required expert testimony on general causation once Cook's report is excluded.
[45] R. Doc. 56 at 1.
[46] *Id.* at 3-7.
[47] *Id.* at 7-8.
[48] *Id.* at 8-9.
[49] R. Doc. 56 at 9-10.
[50] R. Docs. 54.

a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.  *See Daubert*, 509 U.S. at 592-93.  In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community.  *Id.* at 593-95.  However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted).  In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* at

152.   The party offering the testimony must establish its reliability by a preponderance of the evidence.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).[51]

### 2.   Analysis

Pretermitting whether Cook had to verify Johns's diagnoses,[52] performed a proper methodological analysis,[53] or relied upon relevant scientific studies,[54] Cook's report in this case fails to provide reliable expert opinions on general causation for the fourth reason cited in *Novelozo* and *Murphy* – namely, Cook fails to identify the harmful dose of any chemical to which Johns was exposed that would cause the development in the general population of the adverse health conditions or symptoms she alleges.  As explained in *Novezolo* and *Murphy*,

> a causation expert must identify "the harmful level of [] exposure to a chemical." *Allen* [*v. Pa. Eng'g Corp.*], 102 F.3d [194,] 198-199 [(5th Cir. 1996)].  The Fifth Circuit states that this detail is one of the "minimal facts necessary to sustain the plaintiff's burden in a toxic tort case."  *Id.* at 199.  *See also McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433 (5th Cir. 2020) (affirming the exclusion of an expert's opinions when "[n]one [of the studies on which the expert relied] provide conclusive findings on what exposure level of Corexit is hazardous to humans.").

*Novelozo*, 2022 WL 1460103, at *8; *Murphy*, 2022 WL 1460093, at *8.

As in *Novelozo* and *Murphy*, BP emphasizes that Cook's failure here to specify a harmful dose of any chemical to which Johns was allegedly exposed dooms his opinions on general

---

[51] Because Defendants' motion to exclude Cook's expert testimony turns on the reliability inquiry, the Court does not set out the law concerning the relevance and qualification components of the *Daubert* standard.

[52] The necessity of this step may be questioned in light of Judge Barbier's determination in *Stephens*, *Wallace*, and *Turner* that expert medical testimony on specific causation is not required for transient or temporary symptoms that are within the general understanding of laypersons.  Regardless, diagnosis verification would still be required for illnesses falling outside this limited category.

[53] Johns claims that the latest version of Cook's report, the one upon which she relies, corrects the errors that *Novelozo* and *Murphy* found in the analysis section.  Defendants maintain that Cook's report continues to violate the proper sequential process.  R. Doc. 63 at 5.  It is unnecessary to determine whether Cook's analysis was technically proper here because his opinions should be excluded for a more substantial reason.

[54] Cook's report still includes references to studies of oil spills that the court in *Novelozo* and *Murphy* found irrelevant.  *Novelozo*, 2022 WL 1460103, at *7-8; *Murphy*, 2022 WL 1460093, at *7-8.  However, Cook also includes in this report explanations of studies specific to the *Deepwater Horizon* incident.  Nonetheless, because Cook's opinions are excluded for a weightier reason, the Court need not determine whether these studies are sufficiently relevant.

causation.[55]   The plaintiffs in *Novezolo* and *Murphy* both pointed to Cook's reliance on the exposure assessment conducted by plaintiff's expert Rachel Jones, Ph.D., CIH, to counter this argument.  *Novelozo*, 2022 WL 1460103, at *8-9; *Murphy*, 2022 WL 1460093, at *8-9.  In this case, however, Johns does not cite Cook's reliance on Jones (the Court could not find that Jones is even mentioned in Cook's report).  Instead, Johns argues that BP's failure to perform dermal and biological monitoring of oil-spill cleanup workers hampered any expert's ability to provide dose analysis and that Cook's identification of medical conditions caused by oil and dispersants has sufficient overlap with her transient or temporary symptoms to provide the requisite general causation opinions.[56]

Although Johns's arguments are different from those put forward in *Novezolo* and *Murphy*, the result is the same.  Cook's report does not establish a harmful level of any chemical to which Johns was allegedly exposed.  Indeed, Cook does not even identify any specific chemical or chemicals at issue.  Instead, he refers generally to oil, dispersants, and volatile organic compounds. He states that inhalation of volatile organic compounds found in oil and dispersants can cause respiratory symptoms such as cough, throat irritation, shortness of breath, and wheezing.[57] Similarly, Cook says that dermal contact with "volatile organic compounds … are known to have skin symptoms such as erythema, edema, irritation, dermatitis, rash, and blisters."[58]  He concludes that dermal problems are associated with exposure during oil cleanup work, without identifying which chemicals in the crude oil, weathered crude oil, or dispersants can cause the skin irritation.[59] As to ocular conditions, Cook says that burning, itching, conjunctivitis, and dry-eye disease can

---

[55] R. Doc. 52-1 at 15-20.
[56] R. Doc. 56 at 9-10.
[57] R. Doc. 52-5 at 80.
[58] *Id.* at 91.
[59] *Id.* at 92.

occur in individuals exposed to oil, including weathered crude, during oil-spill response and cleanup work.[60]   In sum, Cook never identifies any particular chemical to which Johns was exposed, much less the level of exposure to any such chemical as would be necessary to cause the specific symptoms of which Johns complains – that is to say, the dose necessary to cause the reported reaction.  As stated in *Novezolo* and *Murphy*:

> In that section of his report related to the third Bradford Hill factor, "dose response relationship," Cook notes that "[t]here is a toxicology maxim that the dose determines the poison."  Even though Cook cites to a study of "BP Gulf Oil Spill Disaster response workers," and Cook mentions the risk of exposure to … volatile compounds, he provides no analysis or discussion of the level of these chemicals that would "determine[] the poison," even though this section of his report is dedicated to the issue of a dose response relationship.  Cook's deposition testimony likewise confirms that he was unable "to identify the dose of these toxic chemicals that were necessary to cause any of the health effects," discussed in Cook's report.  This failure weighs heavily in favor of exclusion.

*Novelozo*, 2022 WL 1460103, at *9 (footnotes omitted); *Murphy*, 2022 WL 1460093, at *9 (footnotes omitted).

The same holds true in this case.  Cook's failure to identify the dose of the toxic chemicals necessary to cause any of the complained-of health effects weighs heavily in favor of exclusion. Because identification of the harmful level of exposure to a chemical is one of the "minimal facts necessary to sustain the plaintiff's burden in a toxic tort case," *Allen*, 102 F.3d at 199, and Cook has not provided any such identification, his report is unreliable and thus his opinions are inadmissible.  Accordingly, BP's motion *in limine* to exclude Cook's testimony must be granted.

## B.  Defendants' Motion for Summary Judgment

### 1.  Summary judgment standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[60] *Id.* at 99.

any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id*. at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *Id*.  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014).  Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008).  Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*,

12

572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### 2. Analysis

As in *Novelozo* and *Murphy*, because Cook's general causation opinions are excluded, Defendants are entitled to summary judgment dismissing Johns's claims. Johns has no other medical expert for general causation. Because expert testimony is required on that point, Johns has failed to present a genuine issue of material fact with respect to her claims that her injuries were caused by exposure to oil and dispersants. *See McGill*, 2020 WL 6038677, at *3 (affirming summary judgment against Deepwater Horizon plaintiff in a BELO case after plaintiff's medical causation expert was excluded for failing to satisfy Fed. R. Evid. 702 and *Daubert*); *Johnson v.*

*BP Expl. & Prod., Inc.*, 2020 WL 6742799, at *2 (E.D. La. Nov. 17, 2020) (granting summary judgment against BELO plaintiff where plaintiff lacked an expert opinion).

## IV.     CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' *Daubert* motion to exclude Cook (R. Doc. 52) is GRANTED.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (R. Doc. 53) is GRANTED, and Johns's claims against them are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 2nd day of June, 2022.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE